IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS E. DÁVILA,

Plaintiff

v.                                              CIVIL 08-2098 (ADC)

COMMISSIONER OF SOCIAL SECURITY,

Defendant

OPINION AND ORDER

On April 8, 2003, plaintiff filed an application for Childhood Disability Benefits. The claim was denied. A hearing was held on March 7, 2006. An unfavorable decision resulted.

On September 25, 2008, plaintiff filed this petition for judicial review of a final decision of the Commissioner of Social Security which denied his application for a period of disability and Childhood Disability benefits. He alleges disability as of December 13, 1989 at the age of 6 due to epilepsy, visual-motor problems, language problems, attention deficit and immunological problems. Plaintiff filed a memorandum against such final decision on December 30, 2008. (Docket No. 12.) The defendant filed a memorandum in support of the final decision on February 11, 2009. (Docket No. 16.) Plaintiff filed a reply memorandum on February 21, 2009. (Docket No. 17.)

CIVIL 08-2098 (ADC)                                      2

      The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record when looking at such record as a whole.  In order to be entitled to such benefits, plaintiff must establish that he was disabled under the Act at any time on or before May 26, 2006, the date of the final decision.  See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987).

      Plaintiff was born on May 30, 1985, does not communicate in English, has no vocationally relevant past work experience and has completed one year of college.  He alleges being disabled since birth due to epilepsy, visual-motor problems, language problems, attention deficit disorder, depression and immunological problems.

      After evaluating the evidence of record, administrative law judge Solomon Goldman entered the following findings on May 26, 2006:

1. The claimant meets the non-disability requirements for Childhood Disability Benefits set forth in Section 202(d) of the Social Security Act (with the exceptions noted in 20 CFR § 404.335(b)(2)).
2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
3. The claimant's generalized seizure disorder and allergies are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).
4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

CIVIL 08-2098 (ADC)                              3

> 5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
> 6. The claimant has the following residual functional capacity: the claimant retains the ability to comply with the exertional requirements of work, whereby he could lift/carry 20 pounds; sit for 6 hours; stand/walk for 6 hours.  From the non-exertional aspect, the claimant cannot climb; he cannot be around unprotected heights; he cannot be around moving machinery; he cannot climb, and he cannot drive.
> 7. The claimant has no past relevant work (20 CFR § 404.1565).
> 8. The claimant is a 'younger individual' (20 CFR § 404.1563).
> 9. The claimant has 'a high school (or high school equivalent) education' (20 CFR § 404.1564).
> 10. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 404.1567).
> 11. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 of Table 2, Appendix 2, Subpart P, of Regulations No. 4 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as a hand packager, floor boy, ticketer and inspector, all of which exist in significant numbers in the economy in the high hundreds, each.  The vocational expert also testified that the claimant could also work as a tester of electrical components (900 jobs), as a central supply clerk (1200 jobs), as a bottle line attendant (1100 jobs), and as an electronic assembler (1200 jobs).
> 12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

Tr. at 19-20.

Plaintiff has the burden of proving that he has become disabled within the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137 (1987). A finding of disability requires that plaintiff be unable to perform any substantial

CIVIL 08-2098 (ADC)                          4

gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months.  See 42 U.S.C. § 416(i)(1).  In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner to award benefits.  There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986).  Partial disability does not qualify a claimant for benefits.  See Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965).

The administrative law judge ended the sequential inquiry at step five.  At this level, it has already been determined that the claimant cannot perform any work he has performed in the past due to a severe impairment or combination of impairments.  The inquiry requires a consideration of the claimant's residual functional capacity as well as the claimant's age, education, and past work experience to see if the claimant can do other work.  If the claimant cannot, a finding of disability will follow.  See 20 C.F.R. § 404.1520(f).  At step five, the Commissioner bears the burden of determining that significant jobs exist in the national economy given the above factors.  See Nguyen v. Chater, 172 F.3d 31, 33 (1st Cir. 1999); Lancelotta v. Sec'y of Health & Human Servs., 806 F.2d 284,

CIVIL 08-2098 (ADC)                             5

285 (1st Cir. 1986); Vázquez v. Sec'y of Health & Human Servs., 683 F.2d 1, 2 (1st Cir. 1982).

Plaintiff poses the following errors before the court.  He argues that the administrative law judge considered incorrect information given to the vocational expert as to the existence of significant numbers of jobs in the national economy. He also argues that the hypothetical questions posed by the administrative law judge that included selective portions of the medical record are not listed in plaintiff's medical conditions.  Plaintiff also attacks the manner in which the evidence of record was weighed by the administrative law judge, as well as his relying on residual functional capacity assessments that were based on selectively chosen evidence.

A psychiatric review technique form dated June 24, 2003 by clinical psychologist Hilario de la Iglesia, Ph.D., showed mental retardation. (Tr. at 401-14.)  There were mild functional limitations.  (Tr. at 411.)  The assessment was affirmed by clinical psychologist Orlando Reboredo on January 14, 2004.  (Tr. at 401.) A physical residual functional capacity assessment dated February 12, 2004 showed no exertional limitations.  There were postural limitations in using a ladder or rope.  (Tr. at 418.)  A mental residual functional capacity assessment made by Dr. Lourdes Barreras on December 21, 2005 reflected moderate restrictions in the activities of daily living, marked restrictions in maintaining social functioning,

CIVIL 08-2098 (ADC)                       6

constant deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.  Also noted was that once or twice, plaintiff has had episodes of deterioration or decompensation in a work-like setting. (Tr. at 425-26.)  The psychiatrist also found plaintiff to have a global assessment of functioning of 65% to 75%.

At the administrative hearing held on January 11, 2006, plaintiff was represented by counsel.  Vocational expert Héctor Guerra testified responding to hypothetical questions from the administrative law judge.  The judge asked the vocational expert to assume epileptic seizures of a petit-mal nature and not frequent, that plaintiff has an attention deficit condition, has completed high school and one year of college, and that where his emotional condition would only preclude work where he would be under intense tension and stress in performing work functions of a routine, repetitive and simple work functions within his mental capacity.  He also asked the expert to assume no work background.  The vocational expert testified that plaintiff could work within the electronics industry, at jobs such as tester, electronic component, or assembler of large parts; or in the hospital industry, in central supply work, light and unskilled in nature.  In the food industry, plaintiff could perform as an auto bottle line attendant, unskilled and sedentary in nature. (Tr. at 679.)  The attorney for plaintiff asked questions related to the detailed requirements of the jobs.  The vocational expert noted that

CIVIL 08-2098 (ADC)                    7

the electronics job had no moving parts involved, and that the hospital employment was a routine.  The attention needed would not be intense.  (Tr. at 681.)  Bottle line attendant would require use of moving machinery.  In electronics, the working with large parts would not require moving machinery.  Assuming a hypothetical question of plaintiff's counsel that plaintiff has a seizure disorder, uncontrolled with medication, diagnosed as complex, partial seizure with intractable generalized tonic, chronic seizure disorder and environmental restrictions and positional activities and standing and walking, lifting and carrying restricted because of the seizure attacks, uncontrolled, the expert stated that such a person would be at risk all the time.  (Tr. at 681-82.)  The attorney added factors such as depression, attention hyper activity disorder, an organic affective disorder, supported by a brain scan indicating changes compatible with normalization disease, collagen vascular disease or substance effects (although the person has never used drugs).  This with moderate restrictions of daily activity and marked restrictions in maintaining social functioning, deficiency of concentration and persistence of task, and deterioration in a work setting.  The expert replied that it would be hard to maintain an activity five days a week.  (Tr. at 682.)

Another vocational expert, psychologist Margarita Valladares, testified at the administrative hearing held on March 7, 2006.  The administrative law judge

CIVIL 08-2098 (ADC)                                8

asked a hypothetical question including the consideration of limitations of light to sedentary work, normal epileptic attacks, excluding exposure to dangerous moving machinery, with ability to follow certain instructions, use judgment in making work-related decisions, respond to supervisors, and deal with changes. The vocational expert considered the hypothetical questions and considered plaintiff could perform jobs such as hand packager, floor boy, ticketer and inspector of finished products in different industries. (Tr. at 662.) The expert felt the previously mentioned jobs could also be performed. Plaintiff's attorney questioned in relation to the numbers of the jobs available in the national economy. Emphasis was made on the availability of such jobs in Puerto Rico and their particular locations, including eleven industries in Guaynabo. (Tr. at 666.) The expert noted that the jobs existed in certain industries without pinpointing at which factories any particular job was available. The expert made use of a publication "Directory of Manufacturing Establishments of Puerto Rico", last published in March 2000. (Tr. at 666.) The record contains a publication which is entitled "Industrial Composition by Municipality, Second Trimester 2005". (Tr. at 432-54.) The expert was asked to assume roughly the same hypothetical question asked of the previously testifying expert, including factors like the presence of gases, humidity, and vibrations. (Tr. at 670.) The psychologist stated that she could not evaluate epilepsy and related factors. The expert

CIVIL 08-2098 (ADC)                                9

insisted that she could not evaluate the medical part of the hypothetical in recognizing her limitations, considering her particular expertise. (Tr. at 671.) The psychologist yielded to the expertise of a neurologist for determinations related to epilepsy. Considering residuals, the expert stated that such a person could not work.

In relation to plaintiff's residual functional capacity, when a nonexertional limitation is found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on medical-vocational guidelines, known as the Grid, is appropriate. "If the applicant's limitations are exclusively exertional, then the Commissioner can meet [the] burden through the use of a chart contained in the Social Security regulations.  20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983). . . . If the facts of the applicant's situation fit within the Grid's categories, the Grid 'directs a conclusion as to whether the individual is or is not disabled.' 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969.  However, if the applicant has non-exertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e))[,] that restrict his ability to perform jobs he would otherwise be capable of performing, then the Grid is only a 'framework to guide [the] decision.'

CIVIL 08-2098 (ADC)                          10

20 C.F.R. § 416.969a(d) (2001)." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). "[T]he more that [the] occupational base is reduced by a nonextertional impairment, the less applicable are the factual predicates underlying the Grid rules, and the greater is the need for vocational testimony." Candelario v. Comm'r of Soc. Sec., 547 F. Supp. 2d 92, 99 (D.P.R. 2008); see Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524-25 (1st Cir. 1989); Burgos López v. Sec'y of Health & Human Servs., 747 F.2d 37, 42 (1st Cir. 1984); cf. Vélez-Ramos v. Astrue, 571 F. Supp. 2d 301, 305 (D.P.R. 2008). Considering the erosion on the occupational base, vocational experts thus provided testimony about the effect of such erosion on plaintiff's ability to perform specific jobs existing in significant numbers in the national economy. 42 U.S.C. §423(d)(2); see Vélez-Ramos v. Astrue, 571 F. Supp. 2d at 304-05; Miranda-Monserrate v. Barnhart, 520 F. Supp. 2d 318, 331-32 (D.P.R. 2007).

The administrative law judge asked both vocational experts whether certain jobs existed in the national economy considering seminal factors. The answers included the existence of hundreds of jobs in the economy which plaintiff was considered able to perform. "'[W]ork which exists in the national economy'" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Thomas v. Sec'y of Health & Human Servs., 659 F. 2d 8, 9 (1st Cir. 1981); see 20 C.F.R. § 416.966(a).

CIVIL 08-2098 (ADC)                     11

Notwithstanding plaintiff's attack during the second administrative hearing, it is immaterial whether work exists in the immediate area where plaintiff lives, or whether a particular job vacancy is available. See 20 C.F.R. § 404.1566(a). It is equally immaterial if the administrative law judge could not identify specific companies or locations where jobs could be had, or whether job vacancies existed, or whether there is a lack of work in plaintiff's area. See, e.g., Carpenter v. Astrue, 2009 WL 1632079, at *10 (E.D. Ky. June 10, 2009). Based upon the testimony of both experts, the judge considered plaintiff's age, educational background, work experience and residual functional capacity in determining that he was not disabled.

The administrative law judge related the long and documented history of plaintiff's receiving treatment since childhood for several conditions. He noted that plaintiff responded well to the treatments. The administrative law judge noted that plaintiff has been given intelligence scale tests over the years and that they yielded normal results. In 2003, a test showed that the intellectual development increased over the years to high normal scales. (Tr. at 14.) Psychiatrist, Dr. Lourdes Barreras, started treating plaintiff on October 12, 1994. She found him generally to be coherent, relevant and logical and that his social functioning was adequate although he did not participate in activities appropriate for his age group. Progress notes of Dr. Marina Virella, treating neurologist from

CIVIL 08-2098 (ADC)                              12

2002 through 2004 reflected that plaintiff's seizures were controlled. Plaintiff had poor compliance with his anti-seizure medication. Neurologist Dr. Teresa Castro Ponce completed a physical residual functional capacity assessment on December 19, 2005 and noted that plaintiff lost control during a seizure or attack, and that consequently exposure to certain factors, such as fumes, dust and chemicals, had to be avoided. The administrative law judge discussed in detail how he weighed the medical reports of the physicians, and why he gave less weight to some, for example, noting the inconsistency in Dr. Barreras' assessment. (Tr. at 16.)

The administrative law judge acknowledged allegations of nonexertional impairments. These were required to be considered under SSR 96-7p and circuit case law. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986). The factors to be weighed under the correct standard are the following:

(i)   Your daily activities;
(ii)  The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv)  The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v)   Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi)  Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back,

CIVIL 08-2098 (ADC)                         13

      standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
 (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); <u>see also</u> SSR 96-7p.

  The administrative law judge noted in his rationale that the medical record is unremarkable aside from establishing plaintiff's allegations. The judge noted that the record failed to specify any limitations arising out of the allegations and clinical findings failed to show significant motor, reflex or sensory deficits that suggested neurological compromise. (Tr. at 17.) He considered numerous factors, such as response to treatment, normal IQ, lack of major side-effects, and adequate physical mobility. The administrative law judge also noted plaintiff's limitations as reflected by the evidence of record. Clearly, the judge complied with the weighing of the Avery factors in his rationale. (Tr. at 17.)

  While plaintiff takes issue with the manner in which questions were posed to the vocational experts, in that they arguably did not refer to facts in the record, the questions are an example of typical multi-layered hypothetical questions asked by an administrative law judge as well as by the claimant's representatives. The questions by both the administrative law judge and claimant's representative were based upon hypothetical combinations which could be created from this record. There was no error in the administrative law judge's determining that certain jobs existed in the national economy which plaintiff was capable of performing taking

CIVIL 08-2098 (ADC)                             14

into consideration the hypothetical individual's work restrictions. (Tr. at 19.) <u>See, e.g.</u>, <u>Rivera-Rivera v. Barnhart</u>, 330 F. Supp. 2d 35, 37-38 (D.P.R. 2004).

The administrative law judge conducted a thorough review of the evidence in this extensive record which spans early childhood to adulthood.  Having reviewed the same administrative record considered by the administrative law judge, I adopt the rationale leading to the findings.  Looking at the evidence as a whole, without balancing the medical evidence or making credibility determinations, I cannot decide that the final decision has failed to comply with the requirements of the substantial evidence rule.  There being no good cause to remand, the complaint is dismissed.

The Clerk is directed to enter judgment accordingly.

At San Juan, Puerto Rico, this 14th day of August, 2009.

                                         S/JUSTO ARENAS
                                Chief United States Magistrate Judge